UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TOMAS GLENN and CAROL GLENN doing
business as ELK LAKE BAR AND
RESTAURANT and T & C INVESTMENTS,
INCORPORATED,

                    Plaintiffs,

                                                            Case Number 05-10093-BC
v.                                                          Honorable David M. Lawson

CLEMENT TOWNSHIP,

                    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND DENYING MOTIONS *IN LIMINE***

The plaintiffs own and operate the Elk Lake Inn, a bar and restaurant located in Clement

Township, which is a rural community in mid-Michigan. The Inn is located on an inland lake on

land that is zoned for residential use. The plaintiffs sought to expand this non-conforming use by

converting an open-air patio into a year-round room, but the Township refused to approve the

application for a special use permit. After litigation in a Michigan state court proved unsuccessful,

the plaintiffs commenced the present federal action on May 9, 2005 by filing a three-count

complaint claiming the Township wrongfully imposed conditions in their special use permit that

prevent them from making their property improvements. Counts one and two of the complaint

allege that the Township's actions violate the plaintiffs' substantive due process rights; they request

an injunction and damages. Count three alleges that the Township violated the plaintiffs' equal

protection rights. The defendant has filed a motion for summary judgment asserting various

defenses and challenging the merits of the complaint. The Court heard oral argument from the

parties on February 8, 2006. The Court now finds that the plaintiffs' substantive due process claims

are barred by the statute of limitations and the prior state court judgment; the defendants are entitled
to summary judgment on the merits of the substantive due process claims because the Township's
decision was not arbitrary or capricious; and the defendant is entitled to summary judgment on the
merits of the equal protection claim because the plaintiffs are unable to show that they have been
treated differently than similarly situated businesses or that such different treatment is arbitrary or
capricious.  The Court therefore will grant the defendant's motion for summary judgment and
dismiss the complaint.

I.

In 1992, Clement Township adopted a zoning ordinance that divided the township into
agricultural, residential, and commercial areas (A-1, R-1, and C-1).  The ordinance recognized that
there could be commercial entities already operating in areas newly designated as residential, and
it designated such an entity as a "non-conforming use."

> When a Zoning Ordinance is developed and adopted or amended, rules and
> regulations are imposed which would prevent the establishment or retention of
> certain existing land uses and structures in the places where they are located.  These
> uses and structures are referred to as "non-conforming."  It is the intent of this
> Ordinance to permit these non-conformities to continue until they are removed but
> not to encourage their survival.

Def.'s Mot. Summ. J. Ex. B, Ordinance § 502.  The ordinance permits such non-conforming uses
to continue operating, but they require a special use permit to expand.  "A non-conforming use or
structure may not be enlarged, extended, increased or moved in any district in which this use is not
designated as a principal, accessory or special use."  Def.'s Mot. Summ. J. Ex. B, Ordinance §
502:1(C).

In 1994, the plaintiffs opened the Elk Lake Bar and Restaurant in an old building constructed
in the 1930s that had been used as a bar and restaurant.  Plaintiffs Tom and Carol Glenn, husband

-2-

and wife, formed plaintiff T&C Investments, Inc. to operate the bar.  The bar is located in an area designated R-1, or residential, for zoning purposes.  Because the bar existed prior to the adoption of the ordinance, it is considered a non-conforming use.  However, the plaintiffs sought to expand the facility by adding an open-air patio off the back.  In order to expand the building, the plaintiffs needed a special use permit from the defendant Township due to the zoning ordinance.

The Clement Township ordinance specifically grants discretion to the zoning board to approve special use permits, provided that certain conditions are met, which include the following:

> A.  The proposed use will comply with all special regulations as specified in Subsection 501:4 as well as complying with all appropriate regulations applicable to the district.
> B.  The proposed use is in harmony with the purpose and intent of this Ordinance.
> C.  The proposed use will not adversely affect the health and safety of the public and the workers and residents of the area will not be detrimental to the use or development of adjacent properties or of the general neighborhood.
> D.  The proposed use will comply with all applicable laws, ordinances and regulations of Clement Township, Gladwin County and the State of Michigan.

Def.'s Mot. Summ. J. Ex. B, Ordinance § 501:2(3).  If the conditions are met, the Board "may deny, approve, or approve with conditions the request for the Special Land Use approval."  Def.'s Mot. Summ. J. Ex. B, Zoning Ordinance, section 501:3(6).

On March 7, 1996, the Township Board granted the plaintiffs' request for a Special Use Land Permit in order to allow a "seasonal" patio the plaintiffs could use during the summer.  The permit was very specific and prohibited the plaintiffs from enclosing the patio or installing storm windows in the patio area.  In spite of the restrictions in the permit, the plaintiffs installed "windows with screens" in the patio.  Def.'s Mot. Summ. J. Ex. A, Tomas Glenn's Dep. at 137.  Tomas Glenn testified that the plaintiffs installed the windows to protect the space from inclement weather.

When the defendant learned of the plaintiffs' violation of the permit, Zoning Administrator Deborah Fisch sent the plaintiffs a letter dated January 13, 1998 informing them of the violation and stating they had thirty days to remove the windows or legal action would be taken. About one month later, the plaintiffs filed an application for an amendment to their permit to allow them to leave the windows installed. The Township Board voted three to two to deny the application. The plaintiffs were given ten days to remove the windows.

The plaintiffs then filed an action in the Gladwin County Circuit Court seeking review of the Township's decision. Apparently undaunted by plain language, the plaintiffs alleged that the permit they were given, which stated, "Patio is not to be closed in . . . No storm windows will be permitted," did not preclude them from installing "sliding window/screen combinations." Def.'s Mot. Summ. J. Ex. D, Deposition Exhibit 29 at ¶¶ 7-11. Based on the parties' stipulation, the court remanded the case for the Township Board to develop a record of the decision.

A hearing then was held by the Township Board on June 23, 1999. The plaintiffs' lawyer asked the Board to interpret the permit to allow the plaintiffs to leave the windows installed. In the alternative, he asked that the permit be amended to allow the plaintiffs to leave the windows installed. The Township Board rejected the first request and interpreted the permit to prohibit any glass windows, not just storm windows, from being installed because such windows constitute an enclosure.

The Board proceeded to consider the plaintiffs' request for an amendment to the permit. The Board's lawyer advised the Board that the standard for its decision was whether allowing the windows would make the building "less compatible or less harmonious with the residential character of the neighborhood it's in." Def.'s Mot. Summ. J. Ex. H, Bd. Mtg. Transcript at 24:15-17. The

plaintiffs' lawyer addressed that standard, arguing that the glass windows make the building more harmonious in a residential area because it allowed the plaintiffs "to control the noise that emanates" from the bar. *Id.* at 27:13-14.

The Board then heard comments from several members of the community, some of whom spoke in favor of the amendment and others who spoke against it. Those opposing the amendment cited concerns over the integrity of the regulations, traffic congestion and noise, fighting, and the presence of motorcycle gangs. The speakers who favored the expanded use stated that the plaintiffs ran their business well, and other small business owners sought to encourage generous treatment of those who operate such businesses in residential areas. After discussing the matter among its members, the Board then unanimously voted to deny the requested amendment to the permit.

On August 4, 1999, the plaintiffs filed another petition for review of the Township's decision in the Gladwin County Circuit Court. This time the plaintiffs alleged that the Township's actions were arbitrary, capricious, and without a rational basis. The plaintiffs also claimed the zoning ordinance under which the Board acted was void for failure to reference a map and lack of a master plan. Def.'s Mot. Summ. J. Ex. D, Deposition Exhibit 29 at ¶ 6, 11. The plaintiffs requested the court to find the zoning ordinance void and the decision of the Board "contrary to law." On March 7, 2000, the Township filed a complaint in the same county court seeking to compel the plaintiffs to remove the windows.

On April 12, 2002, the Gladwin County circuit judge found in favor of the Township in the plaintiffs' case, finding the decision to deny the request to modify the permit was not arbitrary or capricious. The court held that the plaintiffs' "challenge to the validity of the Clement Township Zoning Ordinance was not ripe for decision as part of this lawsuit." Def.'s Mot. Summ. J. Ex. L,

State Court Order of April 2, 2002 at 2.  On May 8, 2002, the court ruled on the Township's complaint and ordered the plaintiffs to remove the windows.

Sometime after this decision, the plaintiffs again applied for an amendment to their permit to allow them to reinstall the glass windows.  On October 14, 2003, the Board held a hearing on the plaintiffs' application.  Once again, public comments were permitted, and the comments received were similar to the ones from the last hearing.  The meeting was adjourned without decision and reconvened on October 22, 2003, at which time the board voted three to two to deny the permit amendment.

In 2004, the plaintiffs hired Cynthia E. Winland, a zoning consultant, to investigate the Township's zoning decisions.  Ms. Winland determined that there are seven commercial uses in non-commercial areas within the Township, five of which are illegal.  However, Winland's opinion was based on a zoning map that the defendant claims is inaccurate.  The correct zoning map shows that all but one of these businesses are situated in commercial areas.  Some of the operators of these businesses have filed affidavits attesting to that fact.  The only non-conforming business, which amounted to a resident selling golf carts from his front yard, has since closed.

On May 9, 2005, the plaintiffs filed their complaint in this Court alleging the violations of their constitutional rights described earlier via 42 U.S.C. § 1983.  On December 30, 2005, the defendant filed a motion for summary judgment, arguing that the plaintiffs' case should be dismissed for three reasons.  First, the defendant states the plaintiffs' claims are barred by a three-year statute of limitations.  Second, the defendant argues that the plaintiffs' claims must fail due to the *Rooker-Feldman* doctrine, collateral estoppel, and *res judicata*.  Finally, the defendant states the plaintiffs

are unable to show that the Board's decision was arbitrary or that they have been treated differently than similarly situated individuals.

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Ctr. v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus a factual dispute that "is merely colorable or is not significantly probative" will not defeat a motion

-7-

for summary judgment that is properly supported.  *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.  *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).  The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper.  *Celotex Corp.*, 477 U.S. at 322-23.

The party who bears the burden of proof must present a jury question as to each element of the claim.  *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).  Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes.  *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).  It must be emphasized, however, that "[i]n evaluating the evidence, [the court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'"  *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

A.

The defendant first contends that the plaintiffs' claim is barred by the statute of limitations, which is three years for claims arising under section 1983. The defendant states that the statute started to run on March 7, 1996 when the permit first was issued. Even if the statute was tolled from April 2, 1998 to May 12, 2002 during the state litigation, the claim still is time-barred, according to the defendant. The plaintiffs respond that their claims are based upon the Board's October 22, 2003 denial of their last request for an amendment to the permit. They also maintain that this case involves a continuing constitutional violation, so that the lawsuit is timely.

The length of the statute of limitations in section 1983 cases is determined by consulting state law. *Hardin v. Straub*, 490 U.S 536, 538 (1989) (observing that "[b]ecause no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law"). "Limitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'" *Id.* at 539 (quoting *Board of Regents, University of New York v. Tomanio*, 446 U.S. 478 (1980)). "[T]he proper limitations period for a § 1983 action is the limitations period for personal injury actions in the state in which the § 1983 claim arises." *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997). Michigan has a three year statute of limitations for personal injury actions. *See* Mich. Comp. Laws § 600.5805(10). The three-year period applies to the present case. *See Jones v. City of Hamtramak*, 905 F.2d 908, 909 (6th Cir. 1990).

To determine when the statute of limitations begins to run in section 1983 cases, courts turn to federal law. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (stating that "[a]lthough state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the

-9-

question of when that limitations period begins to run") (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984)). "Ordinarily, the limitations period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (internal quotes and citation omitted). "In determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991). "The exceptions to that rule are two: where the plaintiff can show prior discriminatory activity that continues into the present, as opposed to prior discriminatory activity whose effects continue into the present, and where the plaintiff can show a longstanding and demonstrable policy of discrimination." *Bell*, 351 F.3d at 247 (internal quotes and citations omitted).

In *Delaware State College v. Ricks*, 449 U.S. 250 (1980), the Supreme Court considered the question of when the statute of limitations commenced in an employment discrimination case filed under 42 U.S.C. § 1981. There, the plaintiff was denied tenure and, as was the custom, continued his employment for one more year, at which time it was terminated. The Court held that the statute of limitations began to run when tenure was denied, not when employment inevitably was terminated. The Court stated that "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Id.* at 258 (quoting *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (1979)). The discriminatory acts to which the plaintiffs point in their motion brief in turn must "be squared with the allegations of the complaint." *Id.* at 257.

That rationale was followed in *Chardon v. Fernandez*, 454 U.S. 6 (1981) (per curiam), in which another teacher was denied tenure but not terminated from employment until a later date. The

-10-

Court held that "the operative decision was made – and notice given – in advance of a designated date on which employment terminated." *Id.* at 8.

The plaintiffs' argument that their claim accrued in this case when the Township denied their last request to amend the permit in 2003 "cannot be squared with the allegations in the complaint." *Ricks*, 449 U.S. at 257. The complaint fails to include any allegations related to the October 2003 permit denial. Rather, the complaint focuses entirely on the permit issued in 1996 and the restrictions contained in that permit. The plaintiffs allege that those restrictions violate their due process and equal protection rights. In paragraph 16 of the complaint, the plaintiffs list the permit's restrictions. The complaint then states that "the conditions imposed by the Defendant as set forth in paragraph 16 are invalid under the laws of the State of Michigan." Compl. ¶ 23. The "operative decision" that gave rise to the objectionable consequences was made in 1997.

On the question of a continuing constitutional violation, the Sixth Circuit has drawn a distinction between Fourteenth Amendment claims that allege a deprivation of property and those that allege liberty deprivations. In *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997), a town enacted an ordinance prohibiting through-truck travel on Auburn road. The town had previously settled a dispute with the plaintiff-trucking company, and the settlement agreement gave the plaintiff permission to drive its trucks on Auburn. After the new ordinance was enacted, the plaintiff sued under § 1983, asserting substantive due process claims involving liberty and property deprivation and a takings without just compensation claim. The defendant raised the statute of limitations as a defense, claiming it began to run when the ordinance was passed. The Sixth Circuit stated the limitations period began to run for the takings claim and the substantive due process-

-11-

property claim when the ordinance was passed.  The liberty claim was not barred, however, because

the deprivation was continuing:

> Kuhnle's substantive Due Process claim for deprivation of property is time-barred . . .  Any deprivation of property that Kuhnle suffered was fully effectuated when Resolution 91-87 was enacted, and the statute of limitations began to run at that time.
>
> Kuhnle's substantive Due Process claim for deprivation of liberty is another matter. Kuhnle claims that Resolution 91-87's through truck traffic ban deprived it of liberty interests assertedly created by a fundamental constitutional right to intrastate travel and by the prior settlement agreement between Kuhnle and the County.  If such liberty interests do in fact exist in this case – a question that will have to be decided on remand because it is not before us and we express no opinion on it – then each day that the invalid resolution remained in effect, it inflicted "continuing and accumulating harm" on Kuhnle.

*Id.* at 521-22 (6th Cir. 1997) (citation omitted).

The plaintiffs allege in their complaint that "as land owner and lessee, [the plaintiffs] have

a property interest in the right to be issued a special use permit free and clear of the discretionary

restrictions imposed by the Defendant."  Compl. ¶ 25.  The complaint also alleges that the

defendant's actions "place an arbitrary and unreasonable restriction upon the Plaintiffs' use of the

premises."  Compl. ¶ 28.  In their response to the defendant's motion, the plaintiffs also discuss

property interests.  Pls.' Resp. at 16.  The deprivation alleged is an interference with a property right.

That deprivation occurred when the permit was denied in 1996.  Under the reasoning in *Kuhnle*

*Brothers*, "the statute of limitations began to run at that time."  *Kuhnle Bros.*, 103 F.3d at 522.  If

the plaintiffs have suffered a deprivation of property by the restrictions in the 1996 permit, that

deprivation "was fully effectuated when" the permit containing those restrictions was issued.

The plaintiffs' argument that repeated rejection of their subsequent attempts to modify the

permit restriction revived the statute of limitations must be rejected as well.  Although the Court has

found no Sixth Circuit case on point, the Ninth Circuit, applying the Supreme Court's decisions in

-12-

*Chardon* and *Ricks*, held that a plaintiff's section 1983 cause of action challenging a city's noise

abatement ordinance accrued when the city first took action to abate the plaintiff's night club

activities. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002).

> [The plaintiffs] contend that the City "commenced" the abatement hearing within the limitations period. The abatement hearing did begin on November 14, within the limitations period. But in determining when an act occurs for statute of limitations purposes, we look at when the "operative decision" occurred, *Chardon,* 454 U.S. at 8, and separate from the operative decisions those inevitable consequences that are not separately actionable. *See Delaware State Coll. v. Ricks,* 449 U.S. 250, 258 (1980). We agree with the City that it "commenced" the abatement action on October 18, 1994, when the City police chief sent a letter to appellants and their counsel giving a formal Notice of Abatement of Public Nuisance, or on October 27, 1994, when the City Examiner's Office sent a letter to the City and appellants advising them of the commencement date and format of the administrative hearing. The City's decision to institute formal abatement hearings, and its notice to appellants of that decision, was the "operative decision" for the purposes of triggering the § 1983 statute of limitations. The actual beginning of the abatement hearing on November 14 was simply the effect of that decision and was not a separately unconstitutional act.
>
> *Second,* appellants contend that the City's prosecution of the abatement action during the limitations period constitutes an actionable event. A statute of limitations under § 1983, however, begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action. *Cabrera v. City of Huntington Park,* 159 F.3d 374, 379 (9th Cir.1998). Appellants knew of the abatement action when they received notice of it in October 1994, outside the limitations period. Here again, the continued prosecution of the action within the limitations period was the inevitable consequence of the City's earlier initiation of the abatement proceeding.
>
> As the Supreme Court established in *Ricks* and *Chardon,* the question is when the operative decision was made, not when the decision is carried out.

*Id.* at 1058-59.

The plaintiffs' attempt to use the Township's denial of the permit modification request in

2003 to restart the statute of limitations is dubious in light of the absence from the complaint of any

reference to that proceeding, as noted above.  Even if the 2003 action is considered, it amounts to

no more than a request that the Township reconsider its previous decisions made in 1996 and 1999.

-13-

As noted by the defendant, the minutes from the hearing on the plaintiffs' 2003 request state the plaintiffs' lawyer requested "Amendment to the Special Use is to reinstall windows previously ordered by Judge Hanson to be removed."  Pls.' Resp. to Mot. Summ. J. Ex. C, Oct. 14, 2003 Mtg. Minutes at 1.  The last denial is not evidence of a continuing constitutional violation.  The "operative decision" that started the limitations period was the initial decision on the permit (March 7, 1996) or perhaps the decision after remand from state court and after a full public hearing (June 23, 1999). The repeated applications and the denial in 2003 simply were the "effects" or the "inevitable consequences" of the previous decision.  *See RK Ventures*, 307 F.3d at 1058-59.

The Court finds that the three-year limitations period expired on the due process claims before the plaintiffs filed their complaint.

However, the plaintiffs' equal protection claim is not barred by the statute of limitations. The complaint alleges that the defendant treated the plaintiffs differently by refusing to allow them certain uses of their property while "surrounding properties are allowed similar commercial uses." Compl. ¶ 33.  They also allege that a boat storage facility opened in a residential district without a special use permit within the year before the complaint was filed.  Compl. ¶ 18(e).  The defendant is alleged to have treated others differently than the plaintiffs within the limitations period.  In *Perez v. Laredo Junior College*, 706 F.2d 731 (5th Cir. 1983), a college professor claimed he was denied extra pay that the school gave to other teachers with the same education.  He asserted an equal protection claim.  The Fifth Circuit held that a continuing or new violation existed only if the school made extra payments to the professor's co-workers after denying him that same pay:

> If the college has, since denying Perez additional pay, paid such compensation to another faculty member who, like Perez, has a doctorate degree outside his teaching field, then the statute does not bar his claim. If, however, any such practice ceased

-14-

more than two years ago, Perez would be asserting neither a continuing violation manifested by a number of incidents nor a continuing unlawful policy or practice.

*Id.* at 735.  Because the plaintiffs here have alleged that the defendant failed to enforce the ordinance against others within the limitations period, the equal protection claim is not barred by the statute of limitations.

### B.

The defendant next argues that the plaintiffs claims are barred by the *Rooker-Feldman* doctrine.  In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005), the Supreme Court reiterated that the *Rooker-Feldman* doctrine describes a limit on the jurisdiction of lower federal courts when a party seeks relief from the effects of a state court judgment.  The doctrine does not apply, however, when there are parallel state and federal lawsuits:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521-22.

The *Rooker-Feldman* doctrine bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

Since the decision in *Exxon Mobil*, the Sixth Circuit has analyzed the application of the *Rooker-Feldman* defense by focusing on the source of the injury alleged by the plaintiff.  For instance, in *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), the court of appeals

-15-

differentiated claims that allege harm flowing directly from the state court judgment from those that are caused by the underlying conduct coincidently addressed by the state court judgment. The court explained:

> If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.* at 393. This pronouncement follows naturally from the following statement in *Exxon Mobil*:

> Nor does [28 U.S.C.] § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Exxon Mobil*, 544 U.S. at 293.

The gravamen of the plaintiffs' substantive due process claim is that the conditions placed on the special use permit, specifically the prohibition against enclosing the patio space, impose "an unreasonable restriction upon the Plaintiffs' use of the premises" and "fail to advance a legitimate government interest." Compl. at ¶¶ 27, 28. In their state court suit, the plaintiffs contended that the Township's decision that they cannot install storm windows is "arbitrary, capricious, and without any cognizable rational basis." Def.'s Ex. Mot. Summ. J. Ex. D, Deposition Exhibit 30 at ¶ 10. The state court reviewed the Township's decision to deny the plaintiffs' request for an amendment to their permit and declared that it "could not conclude that the [Township] Board's decision was arbitrary or capricious." Def.'s Mot. Summ. J. Ex. L, State Court Order of Apr. 2, 2002 at 2. The state court affirmed the Township's June 23, 1999 decision "interpreting item No. 6 of the Conditional Special Use Permit as meaning that Petitioners could not enclose their patio with glass

-16-

windows and, also, denying Petitioners' Application to Amend their Conditional Special Use Permit to be able to enclose their patio with glass." *Id.* at 3.

The plaintiffs argue here that the conditions imposed by the Township, specifically the prohibition from enclosing the patio with glass, violate their substantive due process and equal protection rights. Although these allegations deny in many respects the legal conclusions reached by the state court, they do not focus on the state judgment itself as the source of the harm. The circumstances might be different if the plaintiffs were arguing that their constitutional damages resulted from enforcement of the state court judgment compelling removal of the windows. But the plaintiffs have not mentioned that separate action or its outcome in their pleadings. The source of the harm alleged is not the action of the state court; it is the Township's action. The Court finds, therefore, that the *Rooker-Feldman* doctrine does not bar the plaintiffs' claims here. However, as instructed by the appellate courts, the Court must turn to the preclusion doctrines to determine the full effect of the prior state court judgments on the viability the the plaintiffs' federal claims advanced here.

## C.

The defendant's argument that the plaintiffs' substantive due process claims are barred by the doctrine of collateral estoppel succeeds as well. However, the equal protection claim survives that defense. "Issue preclusion is generally referred to as collateral estoppel, whereas claim preclusion is encompassed by *res judicata*." *Dubuc v. Green Oak Township*, 312 F.3d 736, 745 (6th Cir. 2002).

> In Michigan, "for collateral estoppel to apply three elements must be satisfied: (1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue;' and (3) 'there must be mutuality of

-17-

> estoppel.'"  *Monat v. State Farm Ins. Co.,* 469 Mich. 679, 681, 677 N.W.2d 843
> (2004) (quoting *Storey v. Meijer, Inc.,* 431 Mich. 368, 373 n. 3, 429 N.W.2d 169
> (1988)) (alteration in original and footnote omitted).
> As to the mutuality requirement, the *Monat* court held that mutuality was not
> required when collateral estoppel was being used defensively. 469 Mich. at 691, 677
> N.W.2d 843 ("[W]e believe that the lack of mutuality of estoppel should not preclude
> the use of collateral estoppel when it is asserted defensively to prevent a party from
> relitigating an issue that such party has already had a full and fair opportunity to
> litigate in a prior suit.").

*Gilbert v. Ferry*, 413 F.3d 578, 580-81 (6th Cir. 2005).

The plaintiffs' substantive due process claims are barred by collateral estoppel because a question of fact essential to the judgment – whether the Township's decision prohibiting the plaintiffs from installing storm windows is arbitrary and capricious – was actually litigated to final judgment in state court.  The same parties were involved in both cases, and the plaintiffs had a full opportunity to litigate the issue in state court.  The plaintiffs are prohibited from relitigating this issue.

The plaintiffs' equal protection claim is not barred by this doctrine because the parties did not argue and the state court did not decide whether the defendant's treatment of the plaintiffs violated the Equal Protection Clause.

D.

The argument that the plaintiffs claims are barred by the doctrine of *res judicata*, or claim preclusion, leads to a slightly different result.  Federal courts look to federal law to determine whether claim preclusion bars an action.  Even in diversity cases, where the substantive law of the state must be applied by a federal court, "federal law applies to the application of preclusion doctrines."  *McDonald v. Petree*, 409 F.3d 724, 730 n.2 (6th Cir. 2005) (quoting *Aerojet-General*

*Corp. v. Askew*, 511 F.2d 710 (5th Cir. 1975)).  This case involves federal question jurisdiction, and

the federal law of preclusion applies:

> Claim preclusion is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment. *See Montana v. United States,* 440 U.S. 147, 153 (1979). It precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit. *See Stern v. Mascio,* 262 F.3d 600, 608 (6th Cir.2001) (citing *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 918 F.2d 658, 660-61 (6th Cir.1990)).  Claim preclusion only arises, however, in the presence of the following four elements: (1) where the prior decision was a final decision on the merits; (2) where the present action is between the same parties or their privies as those to the prior action; (3) where the claim in a present action should have been litigated in the prior action; and (4) where an identity exists between the prior and present actions. *See Kane,* 71 F.3d at 560.

*Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003).  "To constitute a bar, there must be an

identity of the causes of action[,] that is, an identity of the facts creating the right of action and of

the evidence necessary to sustain each action."  *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d

1224, 1227 (6th Cir. 1981).

The Court believes that both the substantive due process and the equal protection claims are

barred by *res judicata*.  There was a prior decision on the merits in the state court suits, the parties

to both cases are the same, and the claims currently before this court either were, or could have been,

resolved in the state court litigation. In addition, "an identity exists between the prior and present

actions."  *Mitchell*, 343 F.3d at 819.  The plaintiffs' claims here and in the state court arise from the

same facts: the Township's decision to deny them permission to enclose their patio with glass.  The

claims all are related to the same piece of property and are "related in origin" because both cases

originate from the plaintiffs' desire to enclose their patio with windows.  The plaintiffs should have

filed their substantive due process and equal protection claims in state court, and they are barred from raising them here now.

E.

The defendant also asserts a challenge to the merits of the plaintiffs' substantive due process claim. The Township insists that the matter should be dismissed because the plaintiffs are unable to show that the Township's decision to deny them permission to install windows is arbitrary and capricious. The Court agrees.

The federal Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const., Am. XIV, § 1. The due process clause provides two separate rights. The right to procedural due process requires the government to give notice and a hearing before it deprives a person of life, liberty, or property. The right to substantive due process prohibits the government from infringing on "fundamental rights" at all without sufficient justification. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38 (1982).

The plaintiffs have not alleged that they have been deprived of fundamental rights or that their liberty interest has been infringed. The Township's actions, therefore, must only satisfy the rational basis test to fulfill the requirements of substantive due process. *Bowers v. Hardwick*, 478 U.S. 186, 196 (1986) (stating that "if the conduct at issue here is not a fundamental right, . . . there must be a rational basis for the law."), *overruled on other grounds by Lawrence v. Texas*, 539 U.S. 558 (2003). "Laws such as economic or tax legislation that are scrutinized under rational basis review normally pass constitutional muster." *Lawrence v. Texas*, 539 U.S. 558, 579 (2003). The rational basis test requires legislation to be rationally related to a legitimate government purpose. *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). "[S]uch legislation carries with it a presumption

-20-

of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981).  The Supreme Court stated over seventy-five years ago that a plaintiff bears a heavy burden to demonstrate a zoning decision is illegal:

> A court should not set aside the determination of public officers in such a matter unless it is clear that their action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.

*Nectow v. City of Cambridge*, 277 U.S. 183, 187-88 (1928) (internal quotes and citations omitted).

To succeed on their substantive due process claim, the plaintiffs must show that the Township's decision violated their property right.  *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202 (6th Cir. 1995).  In addition, they must prove the Township's decision to prohibit them from installing storm windows was arbitrary and capricious.  *Brody v. City of Mason*, 250 F.3d 432, 438 (6th Cir. 2001).  The undisputed facts demonstrate that the plaintiffs are unable to meet either of these requirements.

First, the plaintiffs have no property right in a permit without the restrictions in question.  In *Triomphe*, the court of appeals held that where a zoning board has discretion to grant a special use permit, no property right in that permit exists.  49 F.3d at 202-03.  The Clement Township ordinance specifically grants such discretion to the zoning board:  "A request for the approval of a Special Use Permit *may* be considered, provided that the following conditions are assured." Def.'s Mot. Summ. J. Ex. B, Ordinance, § 501:2(3) (emphasis added).  An applicant must meet the conditions stated in the ordinance before the township board's discretion is triggered, but there is no language in the ordinance suggesting that the Township *must* act if the conditions are met.  Because the Township plainly has discretion to grant or deny permits and to impose restrictions on such permits, the plaintiffs have not shown that they have a property interest in the permit.

-21-

Second, even if the plaintiffs do have such a property interest, the defendant's decision is not arbitrary or capricious. The Township Board held a hearing at which community members spoke for and against the requested amendment to the permit. Several community members were concerned that allowing the patio to be enclosed would increase traffic at the bar. These concerns were the basis for the defendant's decision. Ms. Molaski, a Board member, stated,

> "I do have a problem with expansion because it is in a residential area. An expansion would mean increase of individuals. You mentioned groups and parties. By enclosing it, . . . would be increasing the seating capacity. And that's not what I would see as beneficial or compatible to what our zoning laws and rules are."

Def.'s Mot. Summ. J. Ex. H, Hearing Transcript at 65. Mr. Gronau, another Board member, stated that to allow the amendment to the permit

> might create further annoyances to the community. We've heard from both parties of the community. And in my opinion I have listened to those complaints and those comments. And the point is then, by doing this, will we enhance the annoyances and create further complaints and detract from that community. And in my – in my opinion, I do think that such an expansion would permit an enclosure and enhance the commercialization of that business and it would detract from the original intent of the board's decision to allow it to continue to be a part of that community under those restrictions.

Id. at 71-72. Mr. Gronau then moved for a vote that the request for an amendment to allow the patio to be enclosed be denied, id. at 72:8-13, and Mr. Hammond stated that "an affirmative vote means you agree with Trustee Gronau's statement of reasons and the other reasons that have been advanced." Id. at 73. The Board then unanimously voted to deny the requested amendment to the permit. Id. at 74.

The decision by the Township Board was explained in the record, and it is based on general notions of health, safety, and community welfare. The decision is rationally related to a legitimate government purpose, that is, to strike a balance between preservation of the area's residential

character and accommodating the pre-existing but non-conforming use by the plaintiffs.  The plaintiffs' substantive due process claim must fail as a matter of law.

F.

The plaintiffs' equal protection must be dismissed as well on the merits.  "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person with the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)  To prevail on this claim, the plaintiffs must demonstrate that they have been treated differently than others similarly situated and that there is no rational basis for the difference in treatment.  *See Neuenfeldt v. Williams Twp.*, 356 F. Supp. 2d 770, 775 (E.D. Mich. 2005) (noting that "[t]he protection of the Clause extends even to 'claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'") (quoting *Village of Willowbrook*, 528 U.S. at 564).  The plaintiffs can prove neither.

Rational basis scrutiny is a daunting standard.  "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenges if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

The fundamental defect in the plaintiffs' equal protection claim, however, lies in a simple failure of proof.  The plaintiffs offered a report of an expert who conducted a survey of the Township and concluded that other commercial enterprises were operating in areas zoned for

-23-

residential use.  However, the expert recognized that she might be using the wrong map, and she

even prefaced her conclusions with the caveat: "Assuming that the zoning map I used is the correct

map."  Pls.' Resp. Ex. E, Expert Report at 5.  The defendant submitted affidavits swearing that she

was, in fact, using the wrong map.  The plaintiffs have not rebutted the defendant's affidavits with

competent proof that the commercial businesses in fact existed in areas of commercial zoning.

Second, the plaintiffs have not shown that the other businesses were similarly situated to

their bar and restaurant business.  The Seventh Circuit has commented that

> [t]o be considered "similarly situated," comparators must be "*prima facie* identical
> in all relevant respects," *Purze v. Vill. of Winthrop Harbor,* 286 F.3d 452, 455-56
> (7th Cir.2004), or "directly comparable to [plaintiff] in all material respects," *Ajayi
> v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 532 (7th Cir.2003). Indeed, "[i]t is clear
> that similarly situated individuals must be very similar indeed." *McDonald,* 371 F.3d
> at 1002.

*Racine Charter One, Inc. v. Racine Unified School Dist.*, 424 F.3d 677, 680 (7th Cir. 2005).  Even

if these businesses in this case were in residential areas, none of them have been shown to be bars

serving alcohol.  They are not similar enough for comparison in a class-of-one case.

Third, the fact that the plaintiffs are operating a bar and the other businesses do not serve

alcohol makes any difference in treatment rational.  The bar is open until 2 a.m. with patrons and

traffic emanating from the premises.  The other businesses in this town do not present the same

concerns.

The rational basis test is not demanding.  The defendant certainly has demonstrated that *if*

it treats these businesses differently, it has a legitimate basis for doing so.  The Court concludes,

therefore, that the plaintiffs cannot sustain their equal protection claim as a matter of law.

-24-

III.

The Court finds that the substantive due process claims are barred on a variety of grounds, the equal protection claim is barred by the doctrine of claim preclusion, and both claims fail on the merits as a matter of law.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt # 18] is **GRANTED**.

It is further **ORDERED** that the plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the defendant's motions *in limine* [dkt #s 25, 26] are **DISMISSED** as moot.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 27, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 27, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

-25-